The first case for oral argument set this morning is Chemonia v. Sandoval School District, Council. Whenever you're ready, you may proceed. Thank you, Your Honor. May it please the Court, my name is Joshua Bradley and I represent the plaintiff, Frank Chemonia. I know it says Chemonia, but it's pronounced Chemonia. I also have Joe Pichesky, so it's kind of a mouthful. Well, we know if you're from here or not from here if you say Sandoval. My name is Sandoval. Well, I'll address you as counsel. I won't even try. Your Honor, I represent Frank Chemonia in his action against Sandoval School District. The basis of this action is a slip-and-fall that occurred in January of 2010. The basis for the appeal is that the Court in Marion County entered a order for summary judgment based upon the natural assimilation rule. We feel that the order entered in the motion for summary judgment was an error and we ask this Court to reverse that decision and remand this matter back for further proceeding. The facts of the case are fairly clear in the present case. On January 11, 2010, Mr. Chemonia entered the Sandoval School District to watch a basketball game with his girlfriend's daughter. At that period of time, he sat in his seat, walked through the door. It was snowing at the time. It was inclement weather. But after that occurred, after he was leaving and actually going during a tournament, a basketball tournament for junior high and high school girls, he fell going down some stairs that lead to the bleachers. The basis for the order for being entered was the natural assimilation rule of water on the stairs which precluded recovery. In the present case, we feel that while the natural assimilation rule is in force, the law of the state of Illinois has been upheld on several occasions, each decision regarding the natural assimilation rule hinges upon the facts of the present case. It is not a hard-pass rule that every assimilation of water on every floor that occurs is a basis for a motion for summary judgment. There have been several cases which have decided that that is not always the factors of the case. More specifically, I believe that in the case of Noah v. Coghill, 296-3886 from the 2nd District of 1998 states, each such case turns on its own facts. As with any voluntary undertaking and duty of care that arises from the undertaking, it comes with the expense of the undertaking. In the present case, there is no doubt that Mr. Shimonian fell. There is no doubt that based upon the affidavits which have been presented in the case, that there was at least a question of factors as to what steps have been taken in order to clean up the water. It is important to note in the present case that this did not occur right at the end of the building. This was not a situation where the water which we had allegedly accumulated occurred right at the end or right towards the middle. This was a situation where it was inside the gymnasium, not a situation where water normally occurred. There is also a question, based upon the affidavits which were presented and the deposition, as to whether or not there was a sign on the door which said, caution wet floor. There are several other factors which go into, which hinges upon the fact that this case was a piece of natural accumulation. You have these signs, you have them saying they mopped these things up, and you have the area where this occurred. This did occur in the area where more likely this stuff would have happened. This happened well inside the building after he had sat down. And when you look at the factors of the case, he wasn't just wearing a pair of flip-flops or some kind of slip shoe. He was very specific as to what type of shoe he was wearing in the present case. Mr. Shimomi is an electrician. He knows and deals around these situations. He was wearing a pair of no-slip boots, which goes in accordance with what he does with his business. So this is not a situation where you have someone walking into an area or a supermarket right at the entry of a building and right at the edge where people are using the track. And this occurred well in. Another important factor in the present case is that during the course of the game, it was stated by Mr. Shimomi in his deposition that several of the other players in the general area where he had fallen had slipped and fallen before. These were not just other individuals. These were ball players who were actually playing the game and one referee. That is a significant factor in the present case, and here is why. You have a situation where you have a game going on. This isn't somewhere where you have nothing going on in the present case, where you have a building where maybe people are walking in and out, or like in the case of a Walmart or a Target or a Kroger store where you walk into a building and all you see is some cars and there may be some displays. As stated in some of the other cases such as Grab versus St. Louis and in Ward versus Kmart, which go into that issue. This is a situation where people are there watching a sporting event, specifically their own children. There are a lot of distractions that are going on in the present case. There are a lot of issues which are happening in the present case, which preclude that issue from just me walking into a building where you see a set of shopping carts and you know it's wet and you see a wet floor sign. Did you plead distraction? I did not. Like the one case where the fellow fell down at a construction site? I don't believe I pled distraction in the initial case. But still beyond that, it still is a question of fact, which precludes a motion for summary and judgment. So I think that you can go to that level that, okay, he's walking in, he's walking out, there are people leaving and going from this building, going into the building, out of the building. There is a basketball game going on. This is not just one game where the game is over and people are leaving. This is a tournament. It's a different situation. And that's where the distinction lies between this case and some of the other natural accumulation cases. Again, the hard, steadfast rule that, okay, there's water on the floor, therefore it must be a natural accumulation, therefore it must be a situation where this covers the entire thing. That cannot be the case here. When you go back to all these cases, it depends upon the facts of the case. You also have the voluntary undertaking of what they were doing, and then they do it to an extent to protect the invitee. In the present case, we are aware that there is questions of fact as to what was going on during the present case. They claim that water was mopped up. They claim there was continual action. They claim there was a sign on the door which said, wet floor. Mr. Shimadi was unclear. He even stated that he didn't believe the sign was on the door when he walked through the door. Those are all questions of fact, which the trier of fact must decide. And it must decide whether or not this accumulation of water or accumulation of some other substance on the area in which he fell rises to the level to defeat the natural accumulation. I would agree that if Mr. Shimadi had walked through the door, there was a wet floor sign, he fell right where most of the people tracked in from that period of time, the natural accumulation probably would have applied in that present case. If he fell right in the vegetable of the gymnasium, it's like any other gymnasium. You walk through the door, then you walk through another door to get into the gym. Had he fallen in the first area where that occurred, where all of the water, where people were coming in and out, then you probably have a natural accumulation issue which would have occurred this time. But because he had fallen into the door, because he had gone into the building, he had sat down. Obviously, his feet were dry from the time that it occurred to the time that it happened. And it leaves the building, and then we have this occurrence happening. After we've witnessed people falling after, the referees have fallen after, the kids have fallen and played basketball, and as Mr. Shimadi testified to in that position, at least one of those that he believed was taken to the hospital because of a fall in the general area in which this all happened, you have an undertaking. You have an issue where this does not apply. You have an issue where this RFAST rule that people try to use in order to get around natural accumulation is not applicable in the present case. And you have the specific facts of this case that rely upon Mr. Shimadi. Had he been the individual who had fallen in the door? Sure. Mr. Krzyzewski's motion is probably clear, and it probably would have brought the suit. But because the situation is different, because of the area in which he fell, and because of the manner in which he fell when doing this, we have a different situation which would have occurred presently. In Ward v. Kmart, 136 Illinois 2nd, 132, the court declared, or the court held, with an owner or occupier's general duty of reasonable care, however, recognizes that the obviousness of the condition, or the fact that the interparty may have been in some sense aware of it, may not always serve as an adequate warning of the condition or consequences of encountering it. It is stated in the process, and Keenan on torts, in any case where an occupier as a reasonable person should anticipate and on the reasonable risk of harm to the abiding,  something more than a way of precaution may be required. This is true, for example, where the reason to expect the abiding's attention will be distracted, as by it is on display, or that after a lapse of time he may forget the existence of a condition, even though, as he discovered it, or had been warned, or recognition of one which would reasonably be expected, and for some reason, such as an arm full of bumbles,  Now, that passage from the Kmart case becomes very clear and very apparent in the present case. This is not a situation as they have outlined, but it is now. And the reason it is so analogous in the present case is because of the specific fact of existence. Because at the time that this occurred, it's ballgame awareness. At the time, girlfriend, now wife, daughter was playing a game. This isn't a situation where you're going into a store and you may have bumbles. Watching a game, watching children, watching people coming in and out, people coming into the door, people watching their own children play basketball. Having watched my own daughter playing softball, I can be sure she did most of the time. So I forget what's going on outside of that game and outside of what's going on in her and those appearances. You get lost in that situation. And that's exactly what's going on here in the present case. So to say that it's just natural accumulation, it was water, it may have been dragged in, that eliminates everything in the present case, is not what we have to rely on. And that's where it goes back to, is the facts of this case. The facts have to dictate what the law is. We cannot, as a court, just say, well, water's dragged in, so that's it. You just lose. If the facts are general, are more specific than what we have and they are different from what we have, then the court has to be able to be the gamekeeper for those things which are different from what is said previously or from what has gone on, and not apply this with a broad stroke. And not apply this with a broad brush. It says, okay, this is what it is. What I'm asking the court is to look at the case on the facts and have the court look at the case on the facts, not just paint the broad stroke that because the water is there, that because there was inclement weather outside, which we don't disagree with, that this case should be dismissed because it has to be a natural accumulation and there is nothing in the world which seems to suffice in order to overcome that burden in the present case. There are exceptions. Tamar v. Ward says it. Graff v. St. Luke, which I've cited in my brief and may link the opinion, outlines that a number of cases have found potential liability for the defense negativity to remove snow from property. In that case, what they say is that this rule that is likely to be used has to be looked at with the eyes of each individual case. We cannot, again, go with a broad stroke or a broad brush. We must bring that back in order to look at each specific case in the context of what those facts are. And in the Shimony case, that's exactly what we have to do. A cursory look at the case would present to the court, well, it's just another natural accumulation case. There was water outside. Let's dismiss it on summary judgment because that's what happens when you have water being attracted. It just goes away. But in every individual case, you have to have a situation where you look at what was going on. And when you look at the facts, the disputed facts of the case, and what the facts are of the case, every case is different. Every case has to rely upon what those facts are and what they are. The rule is fairly general. The rule is fairly broad. What we're looking at is looking at the rule with specificity in order to show that in situations like Mr. Shimony's, that this rule is not an unbreakable barrier which the plaintiffs or any other individual cannot get through in order to bring their losses before a prior fact, that every prior fact should view these. Now, there are some situations where, obviously, it might. But this is not one of them. This is a case which outlines outlier from what is typically seen in these types of situations. So in light of all these factors, in light of the facts of the present case, the court, in this case, erred by just saying, well, it's a natural accumulation. He fell on some water. Let's just limit this much as a referral. And let's dismiss it for grand summary judgment and move on in the present case. What the court in the present case should have looked to was the fact that there are specific facts in the case. There are specific facts in the deposition. There are questions of fact which the court must decide or a prior fact has to decide in order to get through this matter instead of just relying upon a hard-passed rule. In light of all of this and in light of what had happened in the present case, in light of what Mr. Shinoda was going on, we believe that this case should be remanded back to the trial court. We believe that the trial court should have an opportunity or a prior fact should have an opportunity to review and decide these set of facts. We're not saying we accomplished what we did. But we believe in the present case that this matter should be remanded to the trial court and that this matter should be concluded for further proceedings. Thank you, Your Honor. Thank you. Counsel? Counsel? Justices, may it please the court. My name is Joseph Pacheski, and I'm with the firm of Brandon, Schmidt, and Gaffanetti in Carbondale, Illinois, and I represent the defendant at lieu in this case, Sandoval School District No. 501. It is our prayer that this honorable court would affirm the lower court of Marion County's ruling awarding summary judgment in favor of the defendant. It is our position that the trial court acted properly in this case by granting summary judgment on the issue of the National Accumulations Rule. It is well established in this state that a property owner has no duty to prevent injury related to a natural accumulation. A property owner also is not liable for injuries resulting from a natural accumulation that is tracked inside a building from outside. The Natural Accumulation Rule is so deeply ingrained in this state that it even applies to common carriers that owe their passengers the highest duty of care. Now, in a case involving a natural accumulation, it is on the plaintiff to make an affirmative showing of some facts that make the natural accumulation either an unnatural accumulation or an aggravation of a natural accumulation. In order to survive a motion for summary judgment, as the court held in Shoemaker v. Rushford Presbyterian St. Luke's Medical Center, the plaintiff must come forward with some evidentiary facts to show that the water, ice, or whatever snow they slipped upon was of unnatural origin. Now, plaintiff's counsel has continuously said to this court, it's all about the facts. It's all about the facts. We need to turn the decision on the facts. But he has not pointed to one single fact in this case that would give rise to any exceptions to the Natural Accumulation Rule under Illinois law. The following facts in this case are undisputed. The plaintiff slipped and fell on water on stairs that had joined the bleachers of the gymnasium to the gymnasium floor. It is also undisputed that on that day, it was snowing outside. It was also ice outside. The plaintiff has never disputed that the water that he slipped on was the result of individuals' spectators at this basketball tournament tracking in ice and snow from the outdoors. That has never been disputed by plaintiff. There was never a motion filed in response to our motion to raise that issue. And in oral argument in the record, that issue was never raised as well. They have never disputed that that is where the water came from. And there's been also no facts to show that there was any foreign substance, any additional substance on the floor. It has also never been pled that the stairs themselves or any portion of defendant's property was inherently dangerous or defective. That there was any problem with the stairs themselves, that they were inherently slippery, slick for some inherent reason. The only thing that has been pled is that they slipped in water. And that's all the facts that have been shown in this case. As the court held in Frederick v. Professional Truck Driving School, or as they discussed, if there's no evidence presented by the plaintiff that the water they slipped in was anything other than from natural conditions or a natural accumulation, then summary judgment is proper. And on that basis alone, the trial court acted properly in this case by granting summary judgment. Now, Your Honors, I want to touch base on a few of the issues that were raised by a plaintiff in his argument and also in his brief. Now, he assigned to the case of Graff v. St. Luke's Hospital the two well-recognized exceptions to the natural accumulation rule. One being when a defendant negligently removes snow or ice. The other being when a defect in the property causes a natural condition. Now, plaintiff in their brief and here today has never articulated why any of these exceptions apply in the current case. For instance, it's our position that this defendant, this San Domingo School District, did nothing to create an unnatural condition. In every single case on this subject in Illinois, the defendant did something to either move the snow around, they sprinkled up the ice, they did something that created an unnatural condition that the plaintiff slipped in. For instance, in Sims v. Block that the plaintiff cites here, there was a mound of ice that was created by melting snow that was the result of the defendant piling snow up. And after several days, I think it might even have been a week or so, the snow melted and caused ice to form and the plaintiff slipped in that after it had been manipulated by the defendant. In addition, in Fitzsimmons, a case that the plaintiff pointed to, the plaintiff was injured on a mound of snow that was the result of the defendant plowing the property. They plowed the snow over into a mound and the plaintiff slipped over it. Same thing in the case of McCarthy v. Hidden Lake Village Condo Association that the plaintiff cited to. A lady had a driveway, she was in a condo complex. Her landlord pushed the snow into a pile when they plowed it. She couldn't get around her sidewalk because they plowed the snow in her way and she tripped over the mound of snow that the landlord had created. Once again, there are no facts in this case, nothing raised by the plaintiff to show that the defendant did anything to create the condition that caused the injury. Also, I do want to point out that none of these arguments were raised by the plaintiff at the trial court level and they should be deemed weighed in that regard. Now, let's talk about the other exception that is raised in those cases dealing with where a defect in a premises leads to an unnatural condition. One very good example of that is the case of Lapidus v. Kahn, which is at 115 Illinois Ave. 3rd. In that case, there was a hole in the roof and when the hole in the roof was leaking, causing ice to form in a puddle on the ground, the plaintiff slipped in that puddle, which was the result of the unnatural condition that defected the property created by the landlord, or excuse me, by the property owner. In this case, there is no such similar fact. The plaintiff testified and slipped in water. He's never disputed that this was the result of anything other than water being tracked in from the outdoors. Now, I'd like to discuss a few of the other points that were raised by the plaintiff here today. One of the big ones that he continuously raises, and it's continuously raised in the brief as well, is about distance. He says, well, this did not happen right at the entryway of the school district, or to the gymnasium. The injury happened after the plaintiff walked into the gym, went up the stairs, he sat and watched some games, and he slipped on his way out. There has been no cases cited by the plaintiff to show why that matters. And actually, in Reed v. Galaxie Holdings, a First District case from 2009, the court specifically said that if a someone slips as a result of a natural accumulation, there is no duty regardless of where the injury occurs. The same is true, Your Honors, of he's bringing up the timing. Well, it didn't happen right away when he came in. It happened later. Well, the Supreme Court in Heroin v. Chicago Transit Authority specifically rejected that position. They said there has never been an exception in the state of Illinois based upon natural accumulation, based upon the timing of injury. Simply because it took a passage of time for the injury to occur does not logically transform it into an unnatural condition. The court pointed out that that would just be assumption or speculation on behalf of the court to say, well, it might be a result of something else. No, the plaintiff has to show facts to say this water was from something else other than a natural accumulation as opposed to the simple passage of time. In regards to the distance argument that is continuously made, there's a very important case that we cite in our brief, Choi v. Commonwealth Edison Company. It's founded 217 Illinois Ave. 3rd, 952. And that case is very important because it deals with water and soil being tracked in from the outdoors, and it also deals directly with this distance argument. In Choi, there were some pipes that were brought in in a nuclear power plant. And they were brought in on a big cart. And you can imagine a nuclear power plant is a very large facility. They bring it on the first floor, then it's transported via elevator to the third floor. Then they take it through a very long tunnel into the reactor building, a separate large building. And after a period of time, ice and snow that are on these pipes that had accumulated outside starts to melt. Well, one of the workers, after all this transpires, slips in the water on the floor. And the court still held that the natural accumulation rule applied regardless of how far the natural accumulation had traveled. Even though there had been a large distance and even time involved, it did not matter because there were no facts to show that it was anything other than the result of a natural accumulation. Now, plaintiff also raises the arguments about wet floor mats or wet floor signs and floor mats. Now, this is not a great issue of fact in this case because a property owner has no duty, as the court held in Reed v. Galaxy Holdings that I cited earlier. The defendant has no duty to place floor mats out or wet floor signs in the first place. And as my court professor used to always say, you don't get to the issue of negligence unless you get past the issue of duty. If the landlord did not have the duty to place these floor mats out in the first place, then we can't analyze whether or not they took sufficient precautionary measures by putting out a significant amount of floor mats or wet floor signs. The court also discussed this in Lohan v. Walgreens, which was cited in our brief. An individual came into a Walgreens store. She walked past the mats, and she slipped on water on the floor right at the edge of the mat. And they tried to say, well, you needed more floor mats. You needed to keep mopping up water. And the court said no. It said even though they voluntarily put those mats down because she could not show any evidence that either the floor mat itself caused her to trip or that the property itself was inherently dangerous, whereas the floor was inherently slick or unsafe or dangerous, then the National Accumulation Rule aggravated the duty, and there was no duty in the case. And that's the same thing going on here. They had no duty to take those precautionary measures. So even if there is a factual question over whether they had five or ten floor mats or five or ten wet floor signs, it simply doesn't matter, Your Honors. Finally, the plaintiff discussed the case, and actually not finally, but he did discuss the case of Ward v. Kingmark. And I wanted to point out that this case is inequitable to the case at bar for a few different reasons. First off, as Justice Welch pointed out, there's been no pleading of a distraction in this case. Ward v. Kingmark dealt with the open and obvious exception to the duty ruling. And as Justice has known, the court basically applied Section 343 of the Restatement of Torts and said that just because it was an open and obvious distraction, you still applied the balancing duty and foreseeability test of Section 343 as opposed to just simply saying there was no duty. There has never been a case in this state that has applied Section 343 to abrogate the National Accumulations Rule. And actually in Krylin v. the Chicago Transit Authority that I cited too early, the Supreme Court had that opportunity in 2009. The dissenting opinion, I believe, by Justice Freeman raises that issue, that in this state we should apply Section 343 because it's a better, it's a more fair analysis. Well, the majority rejected that approach and did not follow states such as Alaska that have completely gotten rid of the Natural Accumulation Rule and just gone with the duty balancing test. Illinois has never adopted that position. And for that reason, Ward v. Kingmark is not applicable to the case at bar. Your Honor, for all the reasons stated, because there have been absolutely no facts in this case to establish that there were any exceptions to the Natural Accumulation Rule, and because the lower court acted properly in granting summary judgment, we would ask, Your Honor, to please affirm the lower court's decision. Thank you for your time. Thank you, Counsel. Counsel? Thank you, Your Honor. The defendants did exactly what I would assume they would do. They have tried to portray that, okay, here are all the reasons why you shouldn't apply the Natural Accumulation Rule in the present case, and here's every little specific instance where we've done that. However, what they failed to do is look at all the facts and everything else, the totality. Had one issue gone to show or gone to prove that this did not occur, or had there been one of these issues which are cited on the case has been available, perhaps it would have been defeated. But what the defendant wants you to do is say, okay, look at all these cases where all this happened, and in this case this happened, and in this case this happened, and in this case this happened, and that defeats all of this because it has to be a Natural Accumulation Rule. And one of the main issues they gloss over is the voluntary undertaking rule. He says, well, there's some acts out, and there's no duty, and we should just gloss over that, and we should not worry about that issue. No act versus cognitive, which he says doesn't apply, states very clearly. Each such case turns on its own facts. As with any voluntary undertaking, the duty of care or rights from the undertaking is limited to the extent of the undertaking. He doesn't want to talk about that. He wants to brush that under the rug. He wants to say that that doesn't apply. I look at all these other cases where in each other's situation, because some pipes were brought there, and there's no issue with distance, and that distance applies, and this distance applies, and these other things all apply. This cannot happen. It cannot happen. If you go with the theory of the defendant, there is no case in the state of Illinois which would ever suffice to get past the rule of Natural Accumulation. If you go with what the defendant says. There is no case, because in every case, in every situation, in every factual situation, there always has to be water or somebody falls upon it. It always has to accumulate somewhere. In this case, the burden in the present case that the defendant placed upon him is so high, he doesn't want you to get to the facts of the case, he doesn't want you to look at them. Because in this case, Mr. Shimona's case, the facts are as such that defeat him. Now, this may not apply for every other case in Athens. It may not apply for most other cases in Athens. When we look at the totality of facts in the present case, not just each individual fact as its own specific thing, but the totality. You look at the fact there was a game going on. You look at the fact of the distraction. You look at the fact that this occurred a great distance. You look at the fact that Mr. Shimona was inside the gymnasium and left after all this happened. You look at the fact that Mr. Shimona was wearing boots which were of a no-slip nature because of his business. When you look at the fact that there was possibly or possibly not a wet floor sign. When you look at the fact that there were other individuals who were precipitantly falling in the same area during the course of the game, including players, officials, and at least one other individual. All of the facts in its totality go to defeat and rise to the level of allowing this case to continue to try to back. Not just one fact. There's never just one fact in the case. There's never just one thing that says, okay, if that were the case that every time there was water in a building, every time there was water anywhere, natural accumulation, you can't bring it in. That virtually ends any type of civil law action in the state of Illinois for anything that goes on. Because there's always some reason based upon one fact or another. What I'm asking this court to do is not to say that natural accumulation doesn't apply in the state of Illinois. What I'm asking this court to do is to remand this back to the trial court based upon the facts which are presented in the presentation. Do I personally think that the rule across here is better than the state of Illinois' rule of natural accumulation? I do. But that's not the law of the state. The law of the state is natural accumulation and the natural accumulation doctrine. Do I think that would serve us better? Absolutely, I do. I think it would probably serve everybody better in these situations because it would allow courts to look at these things on more of a factual basis and not just on a bright line, broad stroke. There had to be some water, it had to be trapped in, you're out. That's the whole basis of this and that's what Mr. Ciannone is trying to show. That you can't just take and pick and choose each case that says something. You have to look at that. I think that's what Kamar, Noah, and the other cases I heard are trying to do. We're trying to get to a place where these issues, where cases are decided on the facts, where cases even under certain falls. Now, there has to be a gatekeeper. If the gatekeeper is that, you know, in a certain situation, sure, that happens. It was open obvious. You should have known. Go ahead and finish your sentence. There should have been more mass or something like that. Maybe those are bases. But in this case, in my case, you have to look at the facts, not just the facts. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take the case under advisory. Thank you.